UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TADEO PABLO,<br>Petitioner,<br>v.<br>ICE FIELD OFFICE DIRECTOR, et al.,<br>Respondents. | CASE NO. 2:26-cv-01197-JHC<br>ORDER |

## I
## INTRODUCTION

This matter comes before the Court on Tadeo Pablo's Petition for Writ of Habeas Corpus. *See* Dkt. # 3. The Court has considered the materials filed in support of and in opposition to the Petition, the rest of the record, and the governing law. Being fully advised, for the reasons below, the Court GRANTS the Petition. Dkt. # 3.

## II
## BACKGROUND

Petitioner, who is currently 26, is a non-U.S. citizen who is a native and citizen of Guatemala. Dkt. # 16-2 at 2. He entered the United States as an unaccompanied alien child (UAC) on December 1, 2016, and was soon after apprehended by United States Border Patrol

and served a Notice to Appear (NTA) charging him as inadmissible under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act (8 U.S.C. § 1182(a)(6)(A)(i)). Dkt. # 16-2 at 7; Dkt. # 16-1 at 2. Due to his status as a UAC, Petitioner was referred to the Department of Health and Human Services (HHS) pursuant to 8 U.S.C. § 1232. Dkt. # 11 at 2; *see Torres v. Wamsley*, 807 F. Supp. 3d 1266, 1272 (W.D. Wash. 2025) ("The statute requires HHS to 'promptly' place UACs 'in the least restrictive setting that is in the best interest of the child'") (quoting § 1232(c)(2)(A)). Petitioner remained in custody until February 13, 2017, when DHS released Petitioner to the custody of his brother. Dkt. # 11 at 2.

On August 24, 2017, Petitioner filed an application for relief with the Seattle Immigration Court and with the United States Citizenship and Immigration Services (USCIS). Dkt. # 11 at 2. On November 8, 2017, the Seattle Immigration Court administratively closed Petitioner's case. *Id.* The USCIS application remains pending.[1] *Id.* Both parties agree that Petitioner is a member of the *J.O.P. v. U.S. Dep't of Homeland Sec.*, 338 F.R.D. 33 (D. Md. 2020), class of plaintiffs who were determined to be unaccompanied children who filed relief applications with USCIS before February 24, 2025. Dkt. # 11 at 2. *J.O.P.* class members are subject to a stay of removal.[2] *Id.*

On August 14, 2024, Petitioner pleaded guilty to a reckless driving gross misdemeanor and was sentenced to one day of time served and fines. Dkt. # 11 at 2. Petitioner was then arrested first on February 15, 2025, for allegedly driving under the influence and on March 11,

[1] After Petitioner's detention, USCIS issued a notice of action requiring a mandatory in person interview for July 23, 2026, and mandating a payment for his application to remain in good standing. Dkt. # 18 at 1-2; *see also* Dkt. # 17 at 6-7. The Court is unaware of the status of the USCIS application after these updates.

[2] Petitioner has told the Court that regardless of this stay an Immigration Judge (IJ) ordered him removed in an oral decision on June 23, 2026. Dkt. # 18 at 1; Dkt. # 17 at 9; *see also Torres*, 807 F. Supp. 3d at 1269, 72-73 (considering ICE directive to reopen or calendar removal proceedings for similarly situated UACs and finding that "Petitioner's asylum application cannot be adjudicated by an immigration judge").

2025 for alleged reckless driving. Dkt. # 11 at 2. Both cases remain pending. *Id.* No action was taken by immigration authorities after these criminal proceedings. *See generally* Dkt. ## 11, 16-2.

A year later, on March 11, 2026, Petitioner was encountered by Immigration and Customs Enforcement (ICE) agents who were "conducting a targeted enforcement operation . . . on a separate target."[3] Dkt. # 16-2 at 3. ICE agents conducted a vehicle stop after the team "observed two males matching the description of their original target." *Id.* Petitioner was a passenger of the vehicle. *Id.* He provided ICE agents with his government issued documents at which time agents ran Petitioner's information through a Department of Homeland Security database, which revealed Petitioner's criminal history. *Id.* At this time, ICE agents issued a warrant, arrested Petitioner, and transported him to a local field office. *Id.*

Although Petitioner is subject to a stay of removal and has a pending USCIS application, ICE agents determined Petitioner had no documentation to be or remain legally in the United States. *Id.* They then charged him as inadmissible under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act and issued him an NTA. Dkt. # 16-2 at 3-4. Petitioner was then transported to the Northwest ICE Processing Center (NWIPC), where he remains, "pending immigration proceedings." Dkt. # 16-2 at 4; Dkt. # 18.

## III
## DISCUSSION

Federal district courts have the authority to grant a writ of habeas corpus if a person "is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241 (a), (c). "The [habeas] petitioner carries the burden of proving by a preponderance of the

[3] United States Border Patrol was also at the scene, but for clarity the Court will refer to the agents collectively as ICE agents. *See* Dkt. # 16-2 at 3.

evidence that [they are] entitled to habeas relief." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

Petitioner invokes the Due Process Clause of the Fifth Amendment to the United States Constitution, which prohibits the federal government from depriving any person "of life liberty, or property, without due process of law[.]" The right to due process "applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (collecting cases).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id*. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Determining whether a governmental action violates due process:

> [G]enerally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id*. at 335. The traditional test for evaluating due process claims established by *Mathews*, 424 U.S. 319 (1976), "can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).[4]

---

[4] In *Rodriguez Diaz*, the Ninth Circuit applied the *Mathews* test, but "assume[d] without deciding" that *Mathews* applies in the context of immigration detention. 53 F.4th at 1207. In applying the *Mathews* test, the Court recognized that other circuits have applied the *Mathews* test to due process

Petitioner says his due process rights were violated when he was re-detained because the Government "unilaterally shatter[ed] a closure order from 9 years ago without a prior hearing or a real opportunity for defense." Dkt. # 12 at 2-3, 8-10. Respondents say that Petitioner was never detained in the first instance and thus his case does not fall within the re-detention precedent established in this jurisdiction, and alternatively, Petitioner's current detention does not violate Due Process.

Before turning to the merits of Petitioner's claim, the Court acknowledges that, as Respondents say, Petitioner's history of custody differs from that of adult detainees and thus this District's ruling in *E.A.T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321–24 (W.D. Wash. 2025), is not directly applicable. But regardless, Petitioner is entitled to the due process protections. *See Calmo v. Hernandez*, 2026 WL 1868901, at *2-3 (W.D. Wash. June 29, 2026) (applying *Mathews* factors where petitioner was a similarly situated aged-out UAD who was later detained). And for reasons explained later, Petitioner's uncommon procedural posture arriving as a UAC, being released to his family member in the U.S., and having his case administratively closed, raises even more concerns over a possible due process violation than is typical in a re-detention case. And thus, the Court considers the issue under the *Mathews* factors.

challenges to immigration proceedings. *Id*. at 1206. The Ninth Circuit has "regularly applied *Mathews* to due process challenges to removal proceedings." *Id*. And the Supreme Court has applied *Mathews* in a due process challenge to an immigration exclusion hearing. *Id*.; *see Landon v. Plasencia*, 459 U.S. 21 (1982). More recently, courts in this District have repeatedly applied *Mathews* to evaluate noncitizens' due process challenges to re-detention decisions. *See*, *e.g.*, *E.A. T.-B.*, 795 F. Supp. 3d at 1321 (applying *Mathews* to evaluate the constitutionality of the petitioner's re-detention and collecting cases that employ this test in the context of immigration detention); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1135 (W.D. Wash. 2025) (applying *Mathews* to evaluate the constitutionality of the petitioner's re-detention); *Kumar v. Wamsley*, 2025 WL 2677089, *2-3 (W.D. Wash. Sept. 17, 2025) (same); *Ledesma Gonzalez v. Bostock*, 2025 WL 2841574, *7-8 (W.D. Wash. Oct. 7, 2025) (same); *Tzafir v. Bondi*, 2025 WL 3724708, *2-4 (W.D. Wash. Dec. 24, 2025) (same). The Court likewise applies the *Mathews* test here.

A. Private Interest

The first *Mathews* factor considers "the private interest that will be affected by the official action[.]" *Mathews*, 424 U.S. at 335. Freedom from detention "is the most elemental" of private interests affected by official action. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.").

It is undisputed that Petitioner has a liberty interest in being free from detention. *See* Dkt. 15 at 4; *see generally* Dkt. # 12. Still, Respondents say that Petitioner's liberty interest is "diminished" due to intervening criminal arrests. Dkt. # 15 at 4. But there is "no correlation between one's past criminal history and one's current interest in freedom." *Gomez-Lopez v. Hernandez*, 2026 WL 1660359, at *1 (W.D. Wash. June 9, 2026); *see Fiston v. Bondi*, 2026 WL 926064, at *3 (W.D. Wash. Apr. 6, 2026) (finding the first *Mathews* factor in petitioner's favor regardless of criminal arrest); *Awa v. Noem*, 2026 WL 943593, at *1 (W.D. Wash. Apr. 8, 2026) (finding the first *Mathews* factor in petitioner's favor regardless of criminal conviction).

Besides, Respondents do not consider that Petitioner entered the United States as a UAC. This seems to give him an even stronger, and statutorily mandated, interest in being free from detention. Section 1232 provides UACs are to be placed "in the least restrictive setting that is in the best interest of the child" and this remains true even after the UAC reaches the age of eighteen.[5] *See* §1232(c)(2). Thus, the first factor weighs in Petitioner's favor.

[5] Other courts have questioned if similarly situated petitioners may be detained by the Department of Homeland Security at all. *See Torres*, 807 F. Supp. 3d at 1272; *see also Garcia Gabriel v. Hermosillo*, 2026 WL 194233, at *3 (finding that petitioner, even as an aged-out UAC "cannot be subject to the detention procedures in 8 U.S.C. § 1225."). This issue was not briefed by the parties and the Court need not decide it here.

B. Risk of Erroneous Deprivation of Interest Through Procedures Used

The second *Mathews* factor examines "the risk of an erroneous deprivation of [the petitioner's private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[.]" *Mathews*, 424 U.S. at 335. Respondents again say that Petitioner's prior conviction and arrests mean that any risk to of erroneous deprivation is low and does not require a pre-deprivation hearing. Dkt. # 15 at 4. The Court disagrees.

To support its position, Respondent's cite an out-of-District case finding that where the petitioner allegedly had numerous violations of his conditions of release, the arrest was not erroneous because the "allegations [were] not obviously pretexual." *Martinez Hernandez v. Andrews*, 2025 WL 2495767, at *12 (E.D. Cal. Aug. 28, 2025) (granting habeas relief and ordering a prompt, post-deprivation hearing). Even if the Court were to adopt this approach, those facts are distinguishable.

Here, Petitioner did not violate any conditions of release because he did not have any conditions of release or, at the time of his arrest, any pending case before the immigration court. *See* Dkt. ## 11, 16. Petitioner's case before the immigration court has been closed since November 8, 2017. Dkt. # 11 at 2; Dkt. # 16-2 at 4. Petitioner's path to removal or relief is through USCIS, who has left Petitioner's application for asylum pending for nine years. Dkt. # 11 at 2; *see Torres*, 807 F. Supp. 3d at 1273 ("Petitioner is an aged-out UAC with a pending asylum application, which [] is within the jurisdiction of a USCIS asylum officer [] instead of an immigration court") (*citing J.O.P.*, 338 F.R.D. at 42-43). Petitioner has been living in the United States for a decade. He has been issued a Washington state ID and a United States Employment Authorization card. Dkt. # 16-2 at 3. Petitioner did not have an outstanding warrant and was stopped while as a passenger in someone else's vehicle only because he "match[ed] the description" of an intended target. *See* Dkt. # 16-2 at 4.

Petitioner was without notice that he would be arrested and detained and that his immigration court proceedings would re-commence. Nor was he afforded an opportunity to be heard. To say that detaining Petitioner under these circumstances "'would raise a serious constitutional problem' would be an understatement." *J.R.R. v. Genalo*, 2026 WL 691803, at *3 (E.D.N.Y. Mar. 11, 2026) (granting relief to a similarly situated aged-out *J.O.P.* class member based on due process grounds) (collecting cases); *see also Calmo*, 2026 WL 1868901, at *3 (same).

Petitioner's criminal history makes no difference here, and certainly does not eliminate his right to due process. *See E.A. T.-B.*, 795 F. Supp. 3d at 1322 ("That the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process.") (citing *Guillermo M.R. v. Kaiser*, 791 F.Supp. 3d 1021, 1037-38, (N.D. Cal. July 17, 2025)). But even if Petitioner's criminal history made the arrest and detention constitutionally valid, Respondent's arrest appears pretextual.[6] *See id*. (granting habeas relief where the Government's reason for re-arresting petitioner was "mere pretext"). By Respondents' own showing, Petitioner was encountered by agents "while they were conducting a targeted enforcement operation . . . on a separate target." Dkt. # 16-2 at 3. Petitioner, who was a passenger in a vehicle, was stopped because he "match[ed] the description of [the agent's] original target;" not because he was engaging in any unlawful behavior. *Id.* Petitioner seemingly complied with the agents. *See id.* Only after this stop did Respondents discover Petitioner's criminal history, which again, consists of one misdemeanor for reckless driving for which Petitioner received one day of time served and two arrests with pending

[6] In such a situation, Respondents would still be violating Petitioner's due process rights because he still has not been afforded a *post*-deprivation hearing. *See Martinez Hernandez*, 2025 WL 2495767, at *12.

charges, but no further convictions. *See* Dkt. # 11 at 2. The Government took no action after these arrests. *See general* Docket. Petitioner has not been involved with law enforcement for a year. *See* Dkt. # 11 at 2. Petitioner did not have a warrant for arrest. *See id*. Petitioner did not even have an outstanding NTA charging him as inadmissible. *See id*. Petitioner was issued a warrant at the scene and an NTA only *after* he was arrested. *See* Dkt. # 16-2 at 3-4. On its face, the criminal history appears to be pretext for the arrest and detention.

For these reasons, the second factor also favors Petitioner.

c. Government Interest

The third *Mathews* factor contemplates "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. There is a "heightened government interest in the immigration detention context." *Rodriguez Diaz*, 53 F.4th at 1206.

Respondents say they have an interest in preventing noncitizens from remaining in the United States in violation of law and in ensuring their appearance at immigration proceedings. Dkt. # 15 at 5. To be sure, Respondents might have such an interest in a different case; but as already explained, there were no proceedings before the immigration court at which Petitioner could have failed to appear before Petitioner's civil arrest.[7] *See Torres*, 807 F. Supp. 3d at 1273 ("Petitioner is an aged-out UAC with a pending asylum application, which [] is within the jurisdiction of a USCIS asylum officer (instead of an immigration court operated by [Executive Office for Immigration Review], a component of the United States Department of Justice)") (*citing J.O.P.*, 338 F.R.D. at 42-43).

[7] The fact that USCIS scheduled a mandatory in-person interview in Seattle only after Petitioner was detained, and which Petitioner seemingly will not be able to attend because of his detention, also cuts against Respondents' position. *See* Dkt. # 18 at 1-2; *see also* Dkt. # 17 at 6-7.

The Court unpersuaded that Petitioner's criminal history changes the Government's interest in this case. He has now been in civil immigration detention for five months—many times over his sentence of one-day time served for his conviction for reckless driving. Dkt. # 11 at 2. Nor does his pending criminal charges necessarily make detention permissible. *See Fiston*, 2026 WL 926064, at *4 ("Multiple courts have considered cases under similar facts and determined that the government violated due process regardless of a non-citizen's pending criminal charges") (collecting cases); *see also Gill v. Noem, et al.*, 2026 WL 686134, at *1 (W.D. Wash. Mar. 11, 2026) (finding that the government violated non-citizen's due process rights when they re-detained him without notice or a pre-deprivation hearing despite a pending DUI charge). Petitioner was released from custody by local authorities, and Respondents have not explained what interest the Government has in detaining him anyway nor does the Court see one.

This *Mathews* factor also favors Petitioner. *See E.A. T.-B.*, 795 F. Supp. 3d at 1324 (finding that when the reason for detention "occurred months before they were acted upon" that "undermines the suggestion that the Government's interests must be satisfied immediately or that the cost of procedural safeguards would be unsurmountable").

* * *

In sum, all three *Mathews* factors favor Petitioner. The government's detention of Petitioner with insufficient notice and no opportunity to be heard violates the due process protections afforded to him by the Constitution. As a result, Petitioner has proven by a preponderance of the evidence that he "is in custody in violation of the Constitution or laws or treaties of the United States" and thus is entitled to habeas relief.[8] 28 U.S.C. § 2241(c).

[8] Because the Court bases its decision on the due process violation in Petitioner's arrest, it need not consider Petitioner's prolonged and indefinite detention challenge. The Court also makes no finding as to Respondent's detention authority over similarly suited, aged-out UACs.

## IV

## CONCLUSION

For these reasons, the Court GRANTS the habeas petition (Dkt. # 3) and ORDERS that Petitioner be released from custody within 24 hours of this Order, subject to reasonable conditions of release. The Court further ORDERS that Petitioner shall not be re-detained until after a hearing before a neutral decisionmaker and adequate notice.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 21st day of July, 2026.

John H. Chun
United States District Judge